# FOR PUBLICATION



FILED
Apr 11 2012, 9:11 am

CLERK
of the supreme court,
court of appeals and
tax court

ATTORNEY FOR APPELLANT:

**LEANNA WEISSMANN**
Lawrenceburg, Indiana

ATTORNEYS FOR APPELLEE:

**GREGORY F. ZOELLER**
Attorney General of Indiana

**JOSEPH Y. HO**
Deputy Attorney General
Indianapolis, Indiana

# IN THE
# COURT OF APPEALS OF INDIANA

ROBERT A. BAKER,                    )
                                    )
    Appellant-Defendant,         )
                                    )
        vs.                   )    No. 40A05-1109-CR-503
                                    )
STATE OF INDIANA,                   )
                                    )
    Appellee-Plaintiff.          )

APPEAL FROM THE JENNINGS CIRCUIT COURT
The Honorable Jon Webster, Judge
Cause No. 40C01-0906-FB-219

**April 11, 2012**

**OPINION - FOR PUBLICATION**

**BROWN, Judge**

Robert A. Baker appeals his convictions and sentence for possession of methamphetamine within one thousand feet of a school as a class B felony,[1] possession of a controlled substance within one thousand feet of a school as a class C felony,[2] and possession of marijuana with prior conviction as a class D felony.[3] Baker raises two issues, one of which we find dispositive and restate as whether the evidence is sufficient to sustain his convictions for possession of methamphetamine as a class B felony and possession of a controlled substance as a class C felony. We reverse and remand.

The relevant facts follow. On May 14, 2009, Tommy Harper, Baker's next door neighbor in an apartment building at the Ivy Park Apartments, called the police to report a chemical odor coming from Baker's apartment. North Vernon Police Officer Craig Kipper responded to the report and entered Harper's apartment. The front door of Harper's residence was open and a fan was inside the door blowing air out of the apartment, and Harper stated that he was having trouble breathing inside the apartment. Officer Kipper smelled a "strong . . . chemical odor inside the apartment" and after "about a half hour [his] nose and throat were burning." Transcript at 40. Harper informed Officer Kipper that "this usually happens two or three times a month," that he "gets the same odor in his apartment," and that "[t]here's always constant traffic in and out of [Baker's] apartment, all times of day, all times of night." Id. Harper also stated

---

[1] Ind. Code § 35-48-4-6.1 (Supp. 2006).

[2] Ind. Code § 35-48-4-7 (2004) (subsequently amended by Pub. L. No. 138-2011, § 14 (eff. Jul. 1, 2011), Pub. L. No. 182-2011, § 14 (eff. Jul. 1, 2011)).

[3] Ind. Code § 35-48-4-11 (2004) (subsequently amended by Pub. L. No. 138-2011, § 14 (eff. Jul. 1, 2011), Pub. L. No. 182-2011, § 14 (eff. Jul. 1, 2011)).

that "every time that this would [happen] they would run that garbage disposal for maybe two hours at a time and this was like after midnight . . . ." Id. at 108-109.

Officer Kipper contacted other officers and learned that the Sheriff's Department had completed controlled buys involving Baker during the previous months. After North Vernon Police Officer Matthew Staples verified that the chemical odor in the apartment was consistent with the manufacturing of methamphetamine, officers performed a protective sweep of Baker's apartment while another officer obtained a search warrant for the residence. Baker and a woman were in the apartment and were secured by police. Marijuana, a bottle containing pills including Zolpiden, and a coffee filter containing methamphetamine residue were discovered in the apartment. Baker claimed ownership of the marijuana.

On June 30, 2009, the State charged Baker with: Count I, possession of methamphetamine within one thousand feet of a school as a class B felony; Count II, possession of a controlled substance, specifically Lortab as a Schedule III controlled substance and Zolpiden as a Schedule IV controlled substance, within one thousand feet of a school as a class C felony; and Count III, possession of marijuana with prior conviction as a class D felony. At a bench trial, the court, upon request by the State, struck Lortab from the charging information in Count II. The State presented the testimony of Officer Kipper that Baker's apartment was located approximately six hundred feet from the Early Training Center (the "ETC").[4] The court found Baker guilty

---

[4] In response to the State's question: "Is that the Education Training Center?" Officer Kipper replied "Or Early Training Center yes." Transcript at 43. The State then asked "The ETC?" and the Officer replied "Yes." Id.

on each count. Following a hearing, the court sentenced Baker to twenty years for his conviction under Count I, eight years for his conviction under Count II, and two years for his conviction under Count III, and ordered that the sentences be served consecutively.

The issue is whether the evidence is sufficient to sustain Baker's enhanced convictions under Counts I and II. When reviewing the sufficiency of the evidence to support a conviction, we must consider only the probative evidence and reasonable inferences supporting the verdict. Drane v. State, 867 N.E.2d 144, 146 (Ind. 2007). We do not assess witness credibility or reweigh the evidence. Id. We consider conflicting evidence most favorably to the trial court's ruling. Id. We affirm the conviction unless "no reasonable fact-finder could find the elements of the crime proven beyond a reasonable doubt." Id. (quoting Jenkins v. State, 726 N.E.2d 268, 270 (Ind. 2000)). It is not necessary that the evidence overcome every reasonable hypothesis of innocence. Id. at 147. The evidence is sufficient if an inference may reasonably be drawn from it to support the verdict. Id.

Baker argues that the State did not present sufficient evidence to support the enhancements under Counts I and II for being within 1,000 feet of school property. He argues that the school enhancement law is meant to protect those under eighteen rather than those seeking education and is written in such a way as to place the focus on protecting children, not the school. He asserts that the State sought a class B Felony conviction rather than a class D Felony conviction and that "[i]n essence, the State wanted Baker kept in jail for twenty years rather than three." Appellant's Brief at 9. Baker further asserts that the State failed to present accurate and reliable information to

prove beyond a reasonable doubt that the school near Baker's apartment qualified as an educational facility serving those under the age of eighteen. Baker argues that the only evidence concerning the nature of the ETC came in through Officer Kipper who "did not explain whether the services were offered to children, or just to adults," that "[f]rom his testimony, the ETC Learning Center appears to be a building geared toward adult education," and "[t]he State presented no evidence that the center enrolled or taught anyone under the age of eighteen." Id. Baker also maintains that "[t]he State may counter that the words 'high school' imply a place for teens," that such implication should not be enough to meet the State's burden of proof, and that "[t]his is especially so given that many adults without educations later go back to get their GEDs" and "[j]ust because high school level courses are being offered does not prove that those under eighteen are taking them." Id. at 9-10. Baker argues that he cannot be punished more harshly for possessing drugs if he did so near an adult facility and requests that his convictions under Counts I and II be reduced to class D felonies.

The State maintains that the evidence supports the school zone enhancement, that Baker's argument fails because he waived it by failing to raise it during trial, that the State demonstrated that the ETC was a school, that the trial court "could take judicial notice that ETC was a school," and that Baker nevertheless violated the charged statutes by possessing the methamphetamine and controlled substances in a family housing complex. Appellee's Brief at 8. The State asserts that Officer Kipper's testimony allowed the trial court to correctly conclude that the ETC was a school for high-school-aged students, the majority of whom are younger than eighteen. The State argues that

5

"[t]he ETC is located at the same site of the Jennings County Education Center, a school listed on the Jennings County School Corporation's website," that "[t]he two appear to be the same facility, or at least located on the same property owned or rented by the Jennings County School Corporation," that "[i]t is generally known that the two are one and the same," and that "[a]s such, the trial court can take judicial notice that the ETC . . . was a school." Id. at 9. The State also argues that the evidence that Baker's apartment was located in an "apartment complex" is sufficient to prove that Baker possessed the contraband within 1,000 feet of a "family housing complex." Id. at 10.

In his reply brief, Baker argues that he did not waive his sufficiency argument by failing to raise it at trial, that it is well-settled that sufficiency of the evidence may be raised for the first time on appeal, and that he had no obligation to disprove the State's allegations. Baker argues that the ETC is affiliated with Ivy Tech Community College and that this court has held that the term "school property" does not include a college or university. Appellant's Reply Brief at 3. Baker argues that it would not have been proper for the court to take judicial notice of "something that is not legally true," that "[t]he bottom line is that the Record is vague as to the nature of the ETC Learning Center," and that this court should not uphold the increased sentencing based on "conjecture and speculative internet searches."[5] Id. at 4-5. Baker further argues that the

_____

[5] A footnote in the facts section of the State's brief states:

The Ivy Tech website refers to the ETC Learning Center as the North Vernon Education & Training Center; the center is located at 1200 W O & M Avenue, North Vernon, IN 47265. Ivy Tech Community College, http://www.ivytech.edu/columbus/contact/index.html (last visited Feb. 29, 2012).

This is the same location of the Jennings County Education Center, a school listed on the Jennings County School Corporation's website. Jennings County Education Center—

State did not charge him with possession within 1,000 feet of a family housing complex and thus that basis cannot now be used to support an enhancement.

Ind. Code § 35-48-4-6.1 (Supp. 2006), pursuant to which Baker was convicted under Count I, provides in pertinent part:

(a)    A person who, without a valid prescription or order of a practitioner acting in the course of the practitioner's professional practice, knowingly or intentionally possesses methamphetamine (pure or adulterated) commits possession of methamphetamine, a Class D felony, except as provided in subsection (b).

(b)    The offense is: . . .

    (2)    a Class B felony if the person in possession of the methamphetamine possesses less than three (3) grams of pure or adulterated methamphetamine:

        (A)    on a school bus; or

        (B)    in, on, or within one thousand (1,000) feet of:

            (i)    *school property*;

            (ii)    a public park;

            (iii)    a family housing complex; or

            (iv)    a youth program center . . . .

(Emphasis added).

---

Home, http://www.jcsc.org/education/school/school.php?sectionid=84& (last visited Feb. 29, 2012).

Appellee's Brief at 4 n.2.

The State does not point to the record to show, nor has our review revealed, that any such evidence was presented at trial.

Ind. Code § 35-48-4-7(a) (2004) (subsequently amended by Pub. L. No. 138-2011, § 14 (eff. Jul. 1, 2011), Pub. L. No. 182-2011, § 14 (eff. Jul. 1, 2011)), pursuant to which Baker was convicted under Count II, provides:

> A person who, without a valid prescription or order of a practitioner acting in the course of his professional practice, knowingly or intentionally possesses a controlled substance (pure or adulterated) classified in schedule I, II, III, or IV, except marijuana, or hashish, commits possession of a controlled substance, a Class D felony. However, the offense is a Class C felony if the person in possession of the controlled substance possesses the controlled substance:
>
>     (1)    on a school bus; or
>
>     (2)    in, on, or within one thousand (1,000) feet of:
>
>         (A)    *school property*;
>
>         (B)    a public park;
>
>         (C)    a family housing complex; or
>
>         (D)    a youth program center.

(Emphasis added).[6]

In Count I, the State alleged on or about May 14, 2009, Baker "did knowingly or intentionally possess methamphetamine in an amount less than three grams, in, on, or within one thousand feet of school property, to-wit: ETC Learning Center . . . ." Appellant's Appendix at 14. In Count II, the State alleged on or about May 14, 2009, Baker "did knowingly or intentionally possess . . . Zolpiden, a controlled substance listed in Schedule IV, without a valid prescription or order of a practitioner acting in the course

_____

[6] The statute as amended also excludes "salvia, or a synthetic cannabinoid" from the controlled substances governed by the statute. See Ind. Code § 35-48-4-7(a) (Supp. 2011); see also Pub. L. No. 138-2011, § 14 (eff. Jul. 1, 2011), Pub. L. No. 182-2011, § 14 (eff. Jul. 1, 2011).

8

of his/her professional practice, in, on, or within one thousand feet of school property, to-wit: ETC Learning Center." Id. at 15. Accordingly, in order to obtain the enhancements from a class D felony to a class B felony under Count I and from a class D felony to a class C felony under Count II, the State needed to prove that Baker possessed the methamphetamine and controlled substance identified in those counts within 1,000 feet of "school property" and that the "ETC Learning Center" constituted school property. Id.

Ind. Code § 35-41-1-24.7 (Supp. 2006) provides:

"School property" means the following:

(1)    A building or other structure owned or rented by:

    (A)    a school corporation;

    (B)    an entity that is required to be licensed under IC 12-17.2 or IC 31-27;

    (C)    a private school that is not supported and maintained by funds realized from the imposition of a tax on property, income, or sales; or

    (D)    a federal, state, local, or nonprofit program or service operated to serve, assist, or otherwise benefit children who are at least three (3) years of age and not yet enrolled in kindergarten, including the following:

        (i)    A Head Start program under 42 U.S.C. 9831 et seq.

        (ii)    A special education preschool program.

        (iii)    A developmental child care program for preschool children.

(2)    The grounds adjacent to and owned or rented in common with a building or other structure described in subdivision (1).

9

In Pridgeon v. State, this court held, in interpreting a prior version of Ind. Code § 35-41-1-24.7, that "[t]he words 'school property' do not include a college or university." 569 N.E.2d 722, 724 (Ind. Ct. App. 1991), trans. denied. In support of this holding, the court in Pridgeon observed that "[o]ver and again, our courts have strictly construed criminal statutes defining offenses to avoid the creation of penalties by construction," that "[c]riminal statutes must be strictly construed against the State, and they may not be enlarged beyond the fair meaning of the language used," and that "[a]lthough the word 'school' has numerous meanings, this court excluded colleges and universities from the 'common usage' of this term in Lawrence v. Cain (1969), 144 Ind. App. 210, 245 N.E.2d 663." Id. at 723. See Lawrence, 144 Ind. App. at 216, 245 N.E.2d at 666 (providing that "[i]n the ordinary accept[ance] of its meaning, a school is a place where instruction is imparted to the young" and that "[i]t is an institution of learning of a lower grade, below a college or a university; a place of primary instruction"). This court further noted that the legislature's decision was "to afford special protection to children from the perils of drug trafficking" and found that to include colleges would result in an interpretation broader than intended by the legislature. Pridgeon, 569 N.E.2d at 724. See also Reynolds/Herr v. State, 582 N.E.2d 833, 838-839 (Ind. Ct. App. 1991) (noting, in finding the statute constitutional, that the legislative intent behind the statute enhancing the offense for dealing cocaine was similar to Congress' intent in enacting 21 U.S.C. § 845(a), the federal enhancement statute, that the Indiana legislature in drafting the enhancement provisions intended to afford special protection to children from the perils of drug trafficking and to provide harsher penalties for those culprits determined to

peddle drugs on or near school property, and that increased penalties for drug offenders who commit their offenses near school property is rationally related to this purpose).

In this case, the only evidence presented at trial on this issue consisted of the following exchange during the questioning of Officer Kipper by the prosecutor:

Q. Now what other buildings are around Ivy Park?

A. There's Early Training Center.

Q. Is that the Education Training Center?

A. Or Early Training Center yes.

Q. The ETC?

A. Yes.

Q. And that's located where it used to be the old nursing home out there is that correct?

A. Yes.

Q. Where is that located in relation to Ivy Park?

A. It'd be to the north or to the east of Ivy Park approximately 600 feet from [] Baker's apartment to the center of the building.

Q. And you measured that off is that correct?

A. Yes.

Q. What happens at the ETC?

A. They have continuing education classes for students who wish to pursue their high school education to get their diplomas and also I believe they have Ivy Tech classes for continuing education for college credits.

Q. So that's right next door?

A. Yes.

11

Q.     The properties are right next to each other correct?

A.     Yes.

Q.     Certainly less than 1000 feet?

A.     Yes.

Transcript at 43-44.

The State elicited testimony from Officer Kipper that the ETC had "continuing education classes for students who wish to pursue their high school education to get their diplomas." Id. at 44. However, the State does not point to any evidence presented at trial which shows that the ETC was a building or other structure owned or rented by a school corporation or other type of entity or organization described under Ind. Code § 35-41-1-24.7. Moreover, the State does not point to evidence which indicates that the students enrolled in any program at the ETC, including those seeking their high school diplomas, were school-age children and not adults or college-age individuals.

In light of this court's holdings and observations that the words "school property" do not include a college or university, see Pridgeon, 569 N.E.2d at 724, that we strictly construe criminal statutes defining offenses to avoid the creation of penalties by construction and strictly construe criminal statutes against the State, see id., and that the legislative intent was "to afford special protection to children from the perils of drug trafficking," id., we conclude that the evidence presented by the State does not, standing alone, show that the ETC constituted "school property" as contemplated by the Indiana legislature for the purpose of enhancement, or prove beyond a reasonable doubt that Baker committed the possession offenses charged in Counts I and II within 1,000 feet of

school property. Cf. French v. State, 778 N.E.2d 816, 823 (Ind. 2002) (holding that the evidence was sufficient to show that a preschool was "school property" for purposes of an enhancement, where the director of the preschool testified that the school was a private school and did not receive state funding, that the children at the school range in age from twenty months to six years, that the children learn their numbers and alphabet, sing songs, go on field trips, and play, and that the building in which the school is located is owned by the parish); Dixon v. State, 712 N.E.2d 1086, 1093 (Ind. Ct. App. 1999) (holding that the evidence was sufficient to show that a school was "school property" for purposes of an enhancement where the State elicited testimony from an associate superintendent that the property was owned by the school corporation and that the school district had constructed a middle school on the land); Bailey v. State, 603 N.E.2d 1376, 1380 (Ind. Ct. App. 1992) (holding that the evidence was sufficient to support an enhancement where the evidence showed that the center was used as a classroom site for a remedial program for students who failed to succeed in a regular education setting, that classes were conducted for grades 7 through 12 at the center, that student access to other parts of the center was unrestricted, and that a certified teacher taught the curriculum which was consistent with the regularly scheduled classes).

Further, we do not find the State's arguments as to waiver, judicial notice, or the fact that Baker's apartment building may have constituted a family housing complex to have merit. The State does not point to authority for the proposition that a defendant must object at trial to the State's introduction of evidence as to one or more elements of an offense in order to preserve the argument on appeal that the evidence was insufficient

13

to support an element of the offense or sustain the defendant's conviction. See Powers v. State, 540 N.E.2d 1225, 1227 (Ind. 1989) ("This Court has held many times that the burden of proving all elements of a charged crime beyond a reasonable doubt rests with the State and the raising of an affirmative defense does not relieve the State of such burden."), reh'g denied. Further, the State does not point to the transcript or record to show that the trial court took judicial notice, or that it requested the court to take such notice, of the fact that the ETC constituted "school property." In addition, the State's charging information in Counts I and II specifically alleged that Baker committed the possession offenses "in, on, or within one thousand feet of school property, to-wit: ETC Learning Center," see Appellant's Appendix at 14-15, and not within 1,000 feet of a family housing complex, and the State does not point to the record to show that it advanced this basis for the enhancement at trial.

Based upon the evidence presented at Baker's trial and the charging information, we conclude that the evidence is insufficient to permit a trier of fact to conclude beyond a reasonable doubt that Baker committed the enhanced possession offenses charged under Counts I and II within 1,000 feet of school property. Accordingly, we reverse Baker's convictions under Counts I and II and remand with instructions to reduce Baker's convictions under those counts to class D felonies and to resentence him accordingly.[7]

Reversed and remanded.

BAKER, J., and KIRSCH, J., concur.

---

[7] Baker also argues that his sentence is inappropriate in light of the nature of the offenses and his character. However, because we remand with instruction to reduce Baker's convictions under Counts I and II to class D felonies and for resentencing, we need not address this argument.