In the

# United States Court of Appeals

## For the Seventh Circuit

No. 24-2252

UNITED STATES OF AMERICA,

*Plaintiff-Appellee,*

*v.*

JOSHUA SCHATZ,

*Defendant-Appellant.*

Appeal from the United States District Court for the
Southern District of Indiana, Terre Haute Division.
No. 2:24-cr-00001 — **James R. Sweeney, II,** *Chief Judge.*

ARGUED NOVEMBER 12, 2025 — DECIDED JUNE 9, 2026

Before ROVNER, PRYOR, and KOLAR, *Circuit Judges.*

KOLAR, *Circuit Judge.* Defendant Joshua Schatz pled guilty
to one count of possessing child pornography in violation of
18 U.S.C. § 2252A(a)(5)(B). Convictions under that statute are
subject to an enhanced mandatory minimum sentence when
a defendant has a prior state conviction "relating to aggra-
vated sexual abuse, sexual abuse, or abusive sexual conduct
involving a minor or ward." 18 U.S.C. § 2252A(b)(2). We are
asked to decide whether the district court properly found that

Schatz's prior conviction for child molesting under Indiana Code § 35-42-4-3(b) (hereinafter "§ 3(b)") triggers this enhancement. This requires a finding, under the "categorical approach" established by *Taylor v. United States*, 495 U.S. 575 (1990), that all violations of § 3(b) "relate to" the conduct described in 18 U.S.C. § 2252A(b)(2).

While this case requires a new application of the "categorical approach," we are guided by our recent *en banc* decision in *United States v. Liestman*, 97 F.4th 1054 (7th Cir. 2024). There, we held that a prior state conviction for possessing child pornography triggered a nearly identical enhanced mandatory minimum under 18 U.S.C. § 2252(b)(1). In doing so, we interpreted the "relating to" language in § 2252(b)(1) to carry its broad, ordinary meaning, rejecting a strict "congruence" between a state and federal offenses. *Id.* at 1062.

*Liestman* requires a similarly broad reading of § 2252A(b)(2), and under that broad reading all violations of § 3(b) "relat[e] to aggravated sexual abuse, sexual abuse, or abusive sexual conduct involving a minor or ward." Accordingly, we affirm.

## I. Background

Schatz was charged with one count of possessing child pornography under 18 U.S.C. § 2252A(a)(5)(B). He swiftly pled guilty, preserving his right to appeal the application of the enhanced mandatory minimum under § 2252A(b)(2). The statutory enhancement provides that:

> [I]f such person has a prior conviction under … the laws of any State relating to aggravated sexual abuse, sexual abuse, or abusive sexual

> conduct involving a minor or ward, or the pro-
> duction, possession, receipt, mailing, sale, dis-
> tribution, shipment, or transportation of child
> pornography, such person shall be fined under
> this title and imprisoned for not less than 10
> years nor more than 20 years.

At the time of his sentencing, Schatz had one prior conviction under Indiana Code § 35-42-4-3(b) for fondling a two-year old child. Section 3(b) provides:

> A person who, with a child under fourteen (14)
> years of age, performs or submits to any fon-
> dling or touching, of either the child or the older
> person, with intent to arouse or to satisfy the
> sexual desires of either the child or the older
> person, commits child molesting, a Level 4 fel-
> ony.

Schatz argued that his prior conviction did not trigger the mandatory minimum under § 2252A(b)(2). He argued that because § 3(b) protects victims as old as fourteen, while the equivalent federal child-sex-abuse statute draws the line at twelve years old, *see* 18 U.S.C. § 2241(c),[1] the Indiana statute did not "relat[e] to" federal definitions of "aggravated sexual abuse, sexual abuse, or abusive sexual conduct."

But the district court, applying our decisions in *Liestman* and *United States v. Kraemer*, 933 F.3d 675 (7th Cir. 2019), held that § 3(b) triggered the enhancement despite the slight

---

[1] For minors between the ages of twelve and sixteen, federal law also prohibits "sexual abuse," but only where the offender is at least four years older than the victim. *See* 18 U.S.C. §§ 2241(c), 2243(a). Section 3(b) contains no such age-difference requirement.

incongruence between state and federal prohibitions. It held that, reading "relating to" broadly, the differences in victim ages were immaterial, and sentenced Schatz to ten years—consistent with the mandatory minimum. Without the mandatory minimum, Schatz's guideline range would have been 63 to 78 months' imprisonment. Schatz appeals only the application of the statutory minimum to his sentence, which was carved out of the more general appellate waiver in his plea agreement.

## II. Discussion

Schatz's appeal raises an issue of statutory interpretation: whether a conviction under Indiana Code § 35-42-4-3(b) triggers § 2252A(b)(2)'s enhancement for previous state convictions "relating to" child sex abuse. We review issues of statutory interpretation at sentencing *de novo*. *United States v. McSwain*, 25 F.4th 533, 537 (7th Cir. 2022).

Section 2252A(b)(2) is one among many provisions of the federal criminal code that enhances the minimum sentence for a defendant who has a prior conviction meeting a certain criterion or "benchmark." *See Liestman*, 97 F.4th at 1057. To determine whether a conviction triggers a statutory enhancement in this case, we apply the categorical approach: "we look only to the formal definition of the prior offense, cutting real-world facts out of the equation." *Id.* at 1056. "[A] prior offense can trigger a statutory consequence only if its statutory elements are defined in such a way that *all* possible violations of the statute, however committed, would fall within Congress's chosen federal benchmark." *Id.* at 1056–57. This means we look to the "least serious conduct" that can violate the statute

and determine if that conduct fits or exceeds the scope of the benchmark. *Id.* at 1065.

In the classic case, Congress may choose a specific offense or set of offenses—such as "burglary, arson, or extortion"—as the federal benchmark triggering an enhancement. *See Taylor*, 495 U.S. at 578 (applying 18 U.S.C. § 924(e)). Applying the categorical approach in that posture is relatively straightforward: "we compare the elements of the defendant's prior conviction with the elements of the applicable federal offense." *Kraemer*, 933 F.3d at 679; *see Taylor*, 495 U.S. at 599. And "[i]f the state statute of conviction has the same elements as the applicable federal offense, the prior conviction can serve as a predicate" for the enhancement. *Kraemer*, 933 F.3d at 679.

But here, the "federal benchmark" defined by § 2252A(b)(2) is more than a list of offenses. The enhancement applies if there is an existing state conviction "*relating to* aggravated sexual abuse, sexual abuse, or abusive sexual conduct involving a minor or ward" (emphasis added). Thus, while separate federal statutory provisions—18 U.S.C. §§ 2241, 2242, 2243, and 2244—provide elements for "aggravated sexual abuse," "sexual abuse," "sexual abuse of a minor [or] ward," and "abusive sexual contact," we cannot merely compare elements. *See Kraemer*, 933 F.3d at 679–80. Rather, we must first determine the scope of the federal benchmark—*i.e.*, what "relating to" means. *Id.*; *see also Liestman*, 97 F.4th at 1060.

Thus, following *Liestman* and *Kraemer*, we take the categorical approach in three steps: first, we determine the scope of the federal benchmark and how broadly we must read "relating to" in the statute; second, we identify the "least serious conduct" that violates the Indiana statute; third, we ascertain

"whether *that* conduct bears the necessary connection to" the federal benchmark. *Liestman*, 97 F.4th at 1065; *see Kraemer*, 933 F.3d at 679–84.

### A.  Scope of Federal Benchmark

The parties interpret the benchmark at issue—"relating to aggravated sexual abuse, sexual abuse, or abusive sexual conduct involving a minor or ward"—in contrary ways. Schatz argues that "relating to" is descriptive rather than expansive, and a prior state conviction must be strictly congruent with federal definition of aggravated sexual abuse (18 U.S.C. § 2241), sexual abuse (18 U.S.C. §§ 2242, 2243), or abusive sexual contact (18 U.S.C. § 2244) to trigger the enhancement. The government counters that "relating to" should be given its ordinary, expansive meaning, allowing a degree of overbreadth between a state offense and the federal analogs.

We do not consider this dispute on a blank slate. In *Liestman*, we considered a similar argument that "relating to" should be read narrowly in 18 U.S.C. § 2252(b)(1), concluding instead that Congress intended it to have its ordinary, broadening meaning. 97 F.4th at 1064. There, the defendant had a prior conviction for possessing child pornography under Wisconsin law, and the government sought the application of the mandatory minimum under § 2252(b)(1), which applies to any conviction "relating to … the production, possession, receipt, mailing, sale, distribution, shipment, or transportation of child pornography." *Id.* at 1056. The defendant argued that the Wisconsin statute did not "relate to" federal child pornography offenses because it criminalized mere "accessing" of lewd images involving children, which would not be unlawful under federal law. *Id.* at 1065. But we held, based on a broad reading of "relating to," that the enhancement still

applied because "accessing child pornography still clearly bears the requisite connection to the possession or receipt of child pornography" and "address[es] the same harm—sexual exploitation of minors." *Id*. at 1066 (quoting *United States v. Kaufmann*, 940 F.3d 377, 380 (7th Cir. 2019)).

In understanding "relating to" broadly, we began with the phrase's ordinary meaning: "to stand in some relation; to have bearing or concern; to pertain; refer; to bring into association with or connection with." *Id*. at 1060 (quoting *Morales v. Trans World Airlines, Inc*., 504 U.S. 374, 384 (1992)). But understanding that the ordinary meaning is only a "presumption," we then turned to "other clues in the text, structure, and history of § 2252(b)(1), as well as its place in the overall statutory scheme." *Id.*

These clues also supported giving "relating to" its ordinary meaning. First, we noted that interpreting "relating to" broadly avoided conflating the phrase with narrower connecting language like "involving" present in other federal benchmarks. *Id.* at 1060. Second, we observed that when Congress amended § 2252(b)(1) to add "relating to," it also added an enhancement under § 2241(c) for prior offenses that "'would have been an offense' under § 2241(a) or (b) 'had the offense occurred in a Federal prison.'" *Id*. at 1061 (citation omitted). Thus, Congress "knew full well how to condition the applicability of a sentencing enhancement on a prior offense's congruence with federal law" and chose different language for § 2252(b)(1). *Id.* Finally, we observed that when Congress added the "relating to" phrase, few states defined child pornography as narrowly as federal law did; we resisted a "cramped" interpretation of "relating to" that would mean "this portion of the enhancement had no effect in the vast

majority of states at the time Congress expanded § 2252(b)(1) to cover state offenses." *Id.*

*Liestman*'s broad reading of "relating to" in 18 U.S.C. § 2252(b)(1) forecloses Schatz's arguments for a narrow reading of 18 U.S.C. § 2252A(b)(2). The relevant portions of the two provisions are *identical*. The following text is the precise language at issue both here and in *Liestman*, and is common to both § 2252(b)(1) and § 2252A(b)(2):

> [R]elating to aggravated sexual abuse, sexual abuse, or abusive sexual conduct involving a minor or ward, or the production, possession, receipt, mailing, sale, distribution, shipment, or transportation of child pornography, or sex trafficking of children[.]

"Identical words or phrases used in different parts of the same statute (or related statutes) are presumed to have the same meaning." *Servotronics, Inc. v. Rolls-Royce PLC*, 975 F.3d 689, 694–95 (7th Cir. 2020). And here, § 2252(b)(1) and § 2252A(b)(2) are more than related—they are adjacent provisions in the federal code.

We could stop there, but even aside from the plain text, *Liestman*'s reasoning based on the statutory context and amendment history of § 2252(b)(1) applies with full force to § 2252A(b)(2). As with § 2252(b)(1), giving "relating to" its ordinary meaning in § 2252A(b)(2) avoids conflation with narrower connecting terms. And *Liestman*'s reference to statutory history, and the concurrent amendment to § 2241(c), applies equally here—"relating to" was added to § 2252(b)(1) and § 2252A(b)(2) in the very same act. *See* Child Pornography

Prevention Act of 1996, Pub. L. No. 104-208, § 121, 110 Stat. 3009, 3009–29, 3009–30.

We thus proceed with the understanding that Congress intended § 2252A(b)(2) to apply despite some degree of overbreadth between a state statute and federal sex-abuse offenses. So long as the least serious conduct under § 3(b) "bears a connection with" and "address[es] the same harm" as federal sex-abuse offenses, application of the enhancement under § 2252A(b)(2) was appropriate. *Liestman*, 97 F.4th at 1065–66 (citation omitted); *see United States v. Wilson*, 158 F.4th 888, 892 (7th Cir. 2025) ("[A] sufficient connection exists between two laws when they target the same type of harm.").

## B. Least Serious Conduct

To determine the least serious conduct punishable under § 3(b), we begin with the plain language of the statute. The statute prohibits "perform[ing] or submit[ting] to any fondling or touching, of either the child or the older person, with intent to arouse or to satisfy the sexual desires of either the child or the older person," where the child is under fourteen years old. As Schatz observes, the plain text does not place any specific requirements on the age of the perpetrator, sex of the parties, or age difference between perpetrator and victim. And while the threat of force, use of a weapon, or use of a drug garners an enhancement under Indiana Code § 35-42-4-3(b)(1)–(3), none of these factors are required for a conviction under § 3(b). Because of this, Schatz concludes that neither contact nor age difference is required under § 3(b), and that a "seven-year-old touching their own shoulders or feet … with knowledge that it could arouse themselves or the other person" is the least serious conduct.

But determining the least serious conduct punishable by the statute "requires more than the application of legal imagination to a state statute's language." *Gonzales v. Duenas-Alvarez*, 549 U.S. 183, 193 (2007). Rather, there must be "a realistic probability, not a theoretical possibility, that the State would apply its statute to conduct" for us to consider that conduct in the categorical approach. *Id.* The "realistic-probability principle considers the minimum conduct that realistically could be *successfully prosecuted* under the statute in question." *Zaragoza v. Garland*, 52 F.4th 1006, 1015 (7th Cir. 2022). Schatz may establish that certain conduct has a realistic probability of being punishable under § 3(b) if it "was so applied in his own case," of course. *Gonzalez,* 549 U.S. at 193. "But he must at least point to his own case or other cases in which the state courts in fact did apply the statute in the special (nongeneric) manner for which he argues." *Id.*

Schatz cannot do so here. Beginning with his proposition that § 3(b) does not require physical contact between the offender and victim, Schatz provides no example of a successful prosecution under § 3(b) lacking evidence of such contact. In fact, the Indiana Supreme Court held the opposite in *Bond v. State*, 515 N.E.2d 856 (Ind. 1987). There, the defendant was convicted of *attempted* child molesting under the version of Indiana Code § 35-42-4-3(d) then in effect, which also punished "perform[ing] or submit[ing] to any fondling or touching, of either the child or the other person, with intent to arouse or satisfy the sexual desires of either the child or the older person." 515 N.E.2d at 857. Bond argued that the evidence—he had touched his own genitals in front of a minor, followed her home, but did not make contact with her—did not support attempted child molesting. *Id.* The Indiana Court of Appeals affirmed his sentence, holding that "an adult

commits child molesting when he fondles or touches himself with a child if the person uses the child's presence as an aid to the arousal or satisfaction of sexual desires"—in other words, that child molesting is a non-contact crime under Indiana law. *Id.* (cleaned up) (summarizing lower court opinion).

The Indiana Supreme Court, while upholding Bond's sentence, corrected the lower court's analysis. It noted that, under the Court of Appeals's definition of child molesting, "Bond did not attempt child molesting; he committed it." *Id.* The Indiana Supreme Court rejected the lower court's conclusion that child molesting is a non-contact crime: "We conclude instead that the child molesting statute contemplates physical contact between adult and child." *Id.* at 858. Thus, *Bond* provides the contact requirement that may be missing in § 3(b)'s plain text.

Nor can Schatz establish that a conviction can be sustained solely for touching another's shoulders, sides, back, or feet. He cites three cases—*Altes v. State*, 822 N.E.2d 1116 (Ind. Ct. App. 2005), *In re Brown*, 703 N.E.2d 1041 (Ind. 1998), and *Gilliland v. State*, 979 N.E.2d 1049 (Ind. Ct. App. 2012)—for the proposition that "fondling or touching" can include rubbing feet or applying sunscreen. But the cases provide no such support. *Altes* upheld a child molesting conviction where the offender "*initially* started rubbing [the minor's] feet with his hand," but "*moved on* to her legs and eventually, started rubbing her bottom"—there is no indication in that case that rubbing feet alone would have resulted in conviction. *See* 822 N.E.2d at 1121–22 (emphases added). And neither *Brown* nor *Gilliland* even involved prosecutions under § 3(b). While they suggest that touching of non-intimate body parts could

amount to "unwelcome sexual advances" (*Brown*) or could support "knowledge of a 'sexual relationship'" (*Gilliland*), they stop far short of establishing that such conduct could result in a successful § 3(b) prosecution. *Brown*, 703 N.E.2d at 1043–44; *Gilliland*, 979 N.E.2d at 1062–63.

In contrast, Indiana courts have overturned child molesting convictions where the conduct involved touching non-intimate body parts. *See Clark v. State*, 695 N.E.2d 999, 1002 (Ind. Ct. App. 1998) (tickling underarms); *DeBruhl v. State*, 544 N.E.2d 542, 546 (Ind. Ct. App. 1989) (kissing neck); *Jones v. State*, 990 N.E.2d 524, 2013 WL 3776991, at *4 (Ind. Ct. App. 2013) (mem.). To be sure, these cases generally turn on the government's failure to establish the requisite intent. But the intent element is inextricably tied to the charged conduct in child molesting prosecutions, where "[t]he intent element … may be inferred 'from the actor's conduct and the natural and usual sequence to which such conduct usually points.'" *Nuerge v. State*, 677 N.E.2d 1043, 1048 (Ind. Ct. App. 1997) (quoting *Pedrick v. State*, 593 N.E.2d 1213, 1220 (Ind. Ct. App. 1992)). In short, Schatz cannot establish a realistic probability of conviction under § 3(b) for contact with non-intimate body parts, such as his examples of touching shoulders or rubbing lotion.

Schatz is correct, however, that § 3(b) may reach offenders under the age of fourteen. In *State v. J.D.*, the Indiana Court of Appeals held that the statute applies "to offenders regardless of their age and would even apply to offenders who fall within the protected age group set forth in the statute." 701 N.E.2d 908, 910 (Ind. Ct. App. 1998). The court accordingly concluded that a minor could be charged as a delinquent for molesting allegations committed between ages seven and thirteen. *Id.* at 909, 912. This conclusion was reaffirmed in

*C.D.H. v. State*, where the Indiana Court of Appeals upheld
§ 3(b) charges brought in juvenile court against a ten-year-old
boy for allegedly molesting a ten-year-old girl. 860 N.E.2d
608, 609–10 (Ind. Ct. App. 2007). The court clarified that § 3(b)
only requires the offender be older than the victim, and that
"when the legislature amended the child molestation statute
in 1994, it did away with its requirement that the offender be
of any particular age." *Id.* at 611.

The government argues that we should ignore *J.D.* and
*C.D.H.* under the categorical approach because they involve
adjudications of juvenile delinquency, not adult convictions.
It cites to *United States v. Gauld*, where the Eighth Circuit held
that a defendant's prior juvenile adjudication did not count as
a "prior conviction" for the purposes of the § 2252(b)(1) en-
hancement. 865 F.3d 1030, 1032 (8th Cir. 2017). But the gov-
ernment conflates whether a defendant's prior adjudication
counts as a "prior conviction" with determining the "least se-
rious conduct" that is "covered" by the statute. *See Liestman*,
97 F.4th at 1065. No court, to our knowledge, has done as the
government suggests and drawn a line excluding conduct
from the categorical approach that would—as a matter of a
state's criminal procedure—be adjudicated in juvenile court.

Doing so would add new variables to the categorical ap-
proach, which already commands its own fair share of "con-
sternation." *Id*. at 1056. For example, as Schatz observes, Indi-
ana law provides that some minor offenders above the age of
fourteen may be waived into adult court if their offense meets
certain criteria. *See* Ind. Code § 31-30-3-2. Ruling out conduct
by minors because it would be subject to juvenile adjudication
raises the prospect of *ruling in* conduct by a minor who was
waived into adult court. We requested supplemental briefing

on what this analysis might look like, and the parties put forth compelling reasons why either result—excluding juvenile adjudications or considering juvenile waiver—would make it difficult to apply the categorical approach while "cutting real-world facts out of the equation." *Liestman*, 97 F.4th at 1056.

We need not resolve in this case, however, whether conduct that would be subject to juvenile adjudication under state law should be excluded from the categorical approach, or how to evaluate conduct that may be subject to waiver into adult court. Even assuming in Schatz's favor that conduct subject to juvenile adjudication counts for determining the "least serious conduct" covered by § 3(b), that conduct still—as we explain in the next section—"relates to" sexual abuse of children. Thus, we assume without deciding that conduct by individuals under the age of fourteen, regardless of whether such conduct would be subject to juvenile adjudication or waiver into adult court, is "covered" by § 3(b). Given that assumption, the "least serious conduct" that has a realistic probability of conviction based on the available caselaw applying § 3(b), for our purposes, is the touching of intimate body parts between children of similar ages below the age of fourteen.

## C. Necessary Connection to Benchmark

Having defined the relevant benchmark and the conduct punishable under § 3(b), we turn to whether § 3(b) categorically "relat[es] to aggravated sexual abuse, sexual abuse, or abusive sexual conduct involving a minor or ward," despite potentially covering conduct between peers under fourteen that would not be unlawful under federal sex-abuse definitions. Under *Liestman*'s broad reading of the phrase "relating to," we conclude that it nevertheless does.

For one, the conduct in question "bears a connection" to the conduct described in 18 U.S.C. § 2252A(b)(2). Specifically, § 2241(c), which defines "aggravated sexual abuse," makes it unlawful to "knowingly engage[] in a sexual act with another person who has not attained the age of 12 years." As discussed above, the minimum conduct punishable under § 3(b) requires some touching of an intimate area, "accompanied by the specific intent to arouse or satisfy sexual desires." *Clark*, 695 N.E.2d at 1002. To the extent that such touching may be broader than "a sexual act," the kind of touching necessary for a realistic probability of conviction certainly "relat[es]" to a sexual act. *See Liestman*, 97 F.4th at 1065–66. And though § 3(b) protects victims older than federal law (fourteen years old versus twelve) absent an age difference, that is precisely the kind of "overbreadth" we have held still falls under the broad scope of "relating to." *Id.* at 1062; *see Kraemer*, 933 F.3d at 684 ("Mr. Kraemer's Wisconsin conviction for first-degree sexual assault is one 'relating to' abusive sexual conduct involving a minor despite a slight difference in the maximum age of the victim under state and federal law.").

Moreover, "a sufficient connection exists between two laws when they target the same type of harm." *Wilson*, 158 F.4th at 892. Even interpreted to its broadest extent, § 3(b) targets the same kind of harm as 18 U.S.C. § 2252A(b)(2). Section 2252A(b)(2) is aimed at the sexual abuse and exploitation of children—§ 3(b) is no different. *See C.D.H.*, 860 N.E.2d at 612 ("[T]he child molestation statute's purpose is to prohibit the sexual exploitation of children by those with superior knowledge or experience who are therefore in a position to take advantage of children's naivety."). Schatz does not meaningfully contend that § 3(b), as applied in Indiana cases

and actual prosecutions, diverts from the fundamental purpose of federal child-sexual-abuse statutes.

Instead, Schatz argues that our decision in *United States v. Osborne*, 551 F.3d 718 (7th Cir. 2009), demands a holding that § 3(b) does not relate to federal sex-abuse crimes. In *Osborne*, we considered whether a conviction under Indiana Code § 35-42-4-9(b) (hereinafter "§ 9(b)") triggered the § 2252(b)(1) statutory enhancement. Section 9(b), a similar provision of the Indiana code to § 3(b), provides:

> A person at least eighteen (18) years of age who knowingly or intentionally performs or submits to any fondling or touching with a child less than sixteen (16) years of age with intent to arouse or to satisfy the sexual desires of either the child or the older person, commits sexual misconduct with a minor[.]

The only difference between § 3(b) and § 9(b) is the age requirements for victims and offenders: § 3(b) protects victims under the age of fourteen against older offenders of any age, while § 9(b) requires that the victim be below the age of sixteen and the offender be at least eighteen.

We held that a conviction under § 9(b) did not categorically "relate to" sexual abuse. *Osborne*, 551 F.3d at 721. We reasoned that, given the ages of the potential victim and offender, § 9(b) could apply to "behavior common among students in high school, such as kissing or petting 'with intent to arouse ... the sexual desires' of either person." *Id.* at 720. Given that "[e]xploratory touching between students in high school is not a form of 'abusive' sexual contact, as that word is ordinarily understood," the conduct punishable under § 9(b)

could not be said to be a categorical match to federal "abuse" statutes. *Id.*

We also, however, identified several ways in which prohibited sexual contact may be labeled "abusive." Of note, we said that "[s]exual contact with very young girls might be thought abusive simply because of the victim's youth," and specifically noted that "Indiana has a separate statute covering sexual contact with a person 13 or younger." *Id.* at 719. It is, therefore, fully consistent with *Osborne* to conclude that § 3(b) contains the "abusive" element—a "very young" victim—missing in § 9(b). Because the victim's age is limited to thirteen and below in § 3(b), the kind of "common" exploratory touching between high school students is not that statute's province. Rather, § 3(b), as *Osborne* suggested, targets abuse by protecting the "very young" victims of molestation who cannot consent and for whom the touching of sensitive body parts, even by a slightly older peer, can have long-lasting trauma. *Id.*

There is no doubt that the language in § 3(b) is broad. But the language that Congress selected in articulating the benchmark for 18 U.S.C. § 2252A(b)(2) is broad as well. Given how Indiana courts have interpreted the reach of § 3(b), and our own caselaw adopting a broad interpretation of the phrase "relating to" in federal statutes, Schatz's prior conviction was a categorical match.

### III. Conclusion

The district court's judgment is AFFIRMED.